IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

GUSTAVO AYALA & NILSA AYALA,

                Plaintiffs,

       v.

ASSURED LENDING CORPORATION,
et al.,

                Defendants.

HON. JEROME B. SIMANDLE

Civil No. 09-3958 (JBS/KMW)

**OPINION**

APPEARANCES:

Matthew J. Gindele, Esq.
LAW OFFICES OF THOMAS T. BOOTH, JR., LLC
129 W. Evesham Road
Voorhees, NJ 08043
    Counsel for Plaintiffs

Daniel J.T. McKenna, Esq.
BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
Plaza 1000
Main Street
Suite 500
Voorhees, NJ 08043-4636
    -and-
Martin C. Bryce, Esq.
BALLARD, SPAHR LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002
    Counsel for Defendant Countrywide Home Loans, Inc.

John D. Potenza, Esq.
BURKE & POTENZA, ESQS.
161 Madison Avenue
P.O. Box 2037
Morristown, NJ 07962
    Counsel for Defendant Home Site Insurance Company

Brian Michael Thorn, Esq.
WHITE, FLEISCHNER & FINO, LLP
2137 Route 35
Holmdel Corporate Plaza
Holmdel, NJ 07733
     Counsel for Defendants Bahaa Batros and The Prudential
     Insurance Company of America

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

     This matter, centering around insurance coverage for a home
fire, is before the Court on three motions for summary judgment:
Defendant Countrywide Home Loans, Inc., whom Plaintiffs sue based
on Countrywide's alleged failure to pay the insurance premiums
among other things, seeks summary judgment as to all of
Plaintiffs' claims against it and as to its counterclaim against
Plaintiffs to enforce a state court judgment [Docket Item 24];
Defendants Bahaa Batros and The Prudential Insurance Company of
America, whom Plaintiffs sue for negligently issuing an invalid
policy, seek summary judgment as to all of Plaintiffs' claims
against them [Docket Item 25]; and Plaintiffs move for summary
judgment on their claims against Home Site Insurance Company,
seeking to force Home Site to pay for the fire [Docket Item 26].


## II.  BACKGROUND

     This case involves the denial of an insurance claim after a
fire occurred at a house owned by Plaintiffs.  Plaintiffs argue
that their mortgage lender, insurer, and insurance agent

committed various torts and violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C § 2601 in the course of the relationship between the parties from purchase of the home until denial of the insurance claim.  Plaintiffs bring suit against Assured Lending Corporation (the original mortgagee), Countrywide Home Loans, Inc. (current holder of the mortgage note and servicer of the mortgage), First Option Title Agency, L.L.C. (provider of closing services),[1] Home Site Insurance Company (the insurer), Bahaa Batros (an agent for Prudential), and The Prudential Insurance Company of America.

Plaintiffs Gustavo and Nilsa Ayala have resided in Camden, New Jersey since 1998.  (Gustavo Ayala Feb. 6, 2007 Dep. 8:13-19.)  In October 17, 2006, the couple purchased a property at 1112 Wheaton Avenue, Millville, New Jersey.  (Id. 11:15-21.) Plaintiffs claimed to have purchased the property with the intent to move into the home once it was renovated.  (Id. 16:6-17:24; 24:9-24.)  Plaintiffs obtained a $92,000 loan from Assured Lending Corporation for the purchase of the property, secured by a mortgage against the property.  (Muller Dep. at 43:5-17.)[2]

---

[1]  First Option Title has been dismissed from this case.

[2]  After closing, on November 15, 2006, Countrywide contracted to purchase the loan, (Nguyen Dep. 18: 22-19:24.), and ownership was formally transferred on May 17, 2007. (Countrywide Ex. H ("Assignment of Mortgage").)  On December 1, 2006, Assured transferred the servicing rights with respect to the loan to Countrywide. (Countrywide Ex. F ("Notice of Assignment, Sale or Transfer of Servicing Rights").)

The mortgage obligated Plaintiffs to obtain homeowner's insurance and to name Assured and its assignees as mortgagees/additional loss payees. (Countrywide Ex. B ("Mortgage") at 5.) The mortgage also required Plaintiffs to pay the insurance premiums into an escrow account controlled by Assured. (Id. at 4.)

In order to secure the insurance prior to closing, Assured introduced Mr. Ayala to Bahaa Batros, a New Jersey licensed insurance agent with Defendant Prudential Insurance Company. (Gustavo Ayala Jan. 16, 2005 Dep. 34:7-17.) As Mr. Ayala's first language is Spanish, a representative from Defendant Assured lending assisted him with obtaining the policy by acting as translator between Ayala and Batros on a three-way conference call. (Id. 36:1-9.)

There is a dispute about exactly what was said to Batros regarding the occupancy status of the home and whether Mr. Ayala informed Batros about his plans for renovations prior to moving in. Ultimately a policy was issued providing dwelling coverage for the insured property in the amount of $191,000, with effective dates of October 13, 2006 through October 13, 2007.

On December 2, 2006, there was a fire at the Wheaton Avenue property. At the time of the fire, Plaintiffs had not yet moved into the home. The Millville Police Bureau conducted an investigation of the fire on December 2, 2006, and the

4

investigation was eventually assigned to a Detective Deckert. (Home Site Ex. G "Investigation Report.")  Deckert writes in his investigation report that he was told by the firefighters that the fire originated in the basement on some mattresses and that the rear basement door appeared to have been forced open upon arrival of police and fire units.  (<u>Id.</u> at 2.)  Deckert also reports having seen a "For Rent" sign at the house listing Mr. Ayala's phone number.  (<u>Id.</u>)  Deckert reported that Ayala told him that he was doing repairs so he could rent the home out. (<u>Id.</u> at 3.)

Plaintiffs submitted a claim to Home Site for their property damage as a result of the fire.  On March 12, 2007, Home Site denied the claim on the grounds that the home was not "owner occupied" at the time of the loss. (Countrywide Ex. G. ("Home Site Denial Letter") at 1.)  Home Site also informed Plaintiffs that it was rescinding the insurance policy.  (<u>Id.</u> at 2.)

On June 4, 2007, Plaintiffs initiated an action against Home Site, Batros, Prudential Insurance Company of America and Assured in the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2887-07.  An Amended Complaint was filed on July 1, 2008 adding Countrywide as a defendant.

On or about April 14, 2009, almost two years after Plaintiffs commenced litigation, Home Site submitted a subsequent

5

denial of the insurance on the grounds that no payment had been made toward the policy.  (Countrywide's Ex. L.)  According to a Countrywide employee, on December 28, 2006, Countrywide received a bill from Home Site for the insurance premiums, and according this his testimony, Countrywide also received a notice of cancellation of the policy that same day.  (Grzeskowiak Dep. at 23:18-31:3.)  Countrywide contacted Home Site to inquire about the bill and cancellation notice, and Home Site informed Countrywide that the insurance policy was being canceled effective January 17, 2007.  The Countrywide employee testified that Countrywide did not pay the bill because "the bill would have been paid at closing based on the policies and procedures that are in place."  (Id. at 25:21-26:2.)

Shortly after receipt of this information in the state court litigation, Plaintiffs dismissed their action without prejudice and, on May 29, 2009, initiated a second action against Home Site, Batros, Prudential Insurance Company of America, Assured and Countrywide and added First Option as a defendant. This action was removed to this Court, and on September 24, 2009, Plaintiffs filed the presently operative pleading, the First Amended Complaint.

The Amended Complaint contends that Assured Lending and Countrywide's failure to forward Plaintiffs' insurance payments to the insurer, permitting closing to take place without

6

verifying a valid policy of homeowners insurance had been obtained, and failing to discover that no valid homeowners insurance policy was in place gives rise to several claims: negligence (Count I); fraud (Count II); breach of contract (Count III); violation of RESPA (Count IV); violation of N.J. Stat. Ann. § 17:16F-18 (Count V); and violation of New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 58:8-2 (Count VI).[3]

The Amended Complaint claims that Home Site breached its contract with Plaintiffs by improperly denying coverage (Count XII), and seeks declaratory judgment that the insurance contract was in force at the time of the fire (Count XIII).

The Amended Complaint claims that Batros was negligent for failing to indicate the proper intended use of the property to Defendant Home Site, or in the alternative failed to elicit the appropriate kind of information from Plaintiffs to assess the appropriateness of the property for insurance through Home Site and was otherwise negligent in the performance of his duties as a licensed insurance producer in New Jersey (Count XIV).  The Amended Complaint further claims that because of various agency relationships, Batros's negligence is imputed to Home Siteand Prudential; it also claims that Countrywide is responsible for

---

[3]  Plaintiffs also brought five claims against First Option which have since been dismissed (Counts VII, VIII, IX, X, XI).

Assured's negligence and breach of contract (Count XV).[4]

The Amended Complaint asks for reformation of the Home Site insurance policy, arguing in the alternative to their above claims that there was a mutual mistake of fact between the parties regarding Plaintiffs' eligibility for insurance, and that the policy should be retroactively reformed as providing insurance for non-owner occupied properties (Count XVI).

Finally, the Amended Complaint brings a second and separate fraud claim against Assured Lending, arguing that informing Plaintiffs that Batros could provide him the kind of insurance needed was done with the full knowledge that this was not the case, being done purely to close the deal for Assured Lending (Count XVII).

## III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary

---

[4]   This Count is incorrectly labeled Count IV, although there is already a Count IV.  It is in fact Count XV, making the Count labeled Count XV actually Count XVI, and Count XVI actually Count XVII.

8

judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); <u>United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993).  However, the court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999).  Where the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case.  Fed. R. Civ. P. 56(c)(1)(B); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

## IV.  PLAINTIFFS' SUMMARY JUDGMENT MOTION

Plaintiffs argue that Home Site breached the insurance contract by failing to pay for the fire damage.[5]  Under the Third Circuit Court of Appeals' controlling interpretation of New Jersey law, to state a claim for breach of contract, a party must prove that there is (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4)

---

[5]  They also seek declaratory judgment as to the scope of the coverage.  But since this claim is redundant with their breach of contract claim, the parties have treated them as identical.  Plaintiffs' motion does not address their claim for reformation of the contract.

that the party stating the claim performed its own contractual obligations.  Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).  As explained below, there is a genuine dispute of material fact regarding whether Mr. Ayala in fact planned to move his family into the home, meaning that both the coverage and material misrepresentation issues are not ripe for summary judgment.  Additionally, Plaintiffs have failed to adduce evidence that they performed their own contractual obligations. Consequently, Plaintiffs' motion will be denied.

### A.  Material Misrepresentation

In order to show that Plaintiffs are entitled to summary judgment that Home Site breached the insurance agreement, they would have to show that there is no genuine dispute of fact as to whether Home Site's defense of equitable fraud applies. Equitable fraud provides a basis for a party to rescind a contract.  Jewish Ctr. of Sussex Cty. v. Whale, 432 A.2d 521, 524 (N.J. 1981).  Under New Jersey law, equitable fraud requires proof of (1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party.  Id.; Liebling v. Garden State Indem., 767 A.2d 515, 518 (N.J. Super. Ct. App. Div. 2001).  Thus, a party seeking rescission based on equitable fraud need not prove knowledge of the falsity and an

intention to obtain an undue advantage.  Id.  It is the insurer's burden to prove reasonable reliance of an insured's false statements when issuing the policy.  Allstate Ins. Co. v. Meloni, 236 A.2d 402, 404 (N.J. Super. Ct. App. Div. 1967).[6]  Within the context of insurance, a misrepresentation by the insured will void the coverage if it is material to the particular risk assumed by the insurer, and actually and reasonably relied upon by the insurer in the issuance of the policy.  First American Title Ins. Co. v. Lawson, 827 A.2d 230, 237 (N.J. 2003).  A misrepresentation is material if, among other things, it "naturally and reasonably influenced the judgment of the underwriter in making the contract at all."  Ledley v. William Penn Life Ins. Co., 651 A.2d 92, 96 (N.J. 1995) (internal quotations and citations omitted).

There is a genuine dispute of fact as to whether Mr. Ayala made a false representation to Home Site.  Batros testified that

---

[6]  In 1936, the Supreme Court of New Jersey (then the Court of Errors and Appeals) ruled that "misrepresentation, to avoid the policy, must be tainted with the fraudulent purpose to deceive."  Kozlowski v. Pavonia Fire Ins. Co., 183 A. 154, 155 (N.J. 1936).  But this holding was long-since abandoned by the New Jersey Supreme Court.  Metropolitan Life Ins. Co. v. Tarnowski, 20 A.2d 421, 423 (N.J. 1941) (holding that false statement was misrepresentation even though "[t]he insured was a native of Poland, and had but a very limited use of the English language, so much so that an interpreter was required when she made answer to the queries contained in the application for the policy; and it may very well be that the jury concluded that under all the circumstances the burden of proof of conscious fraud had not been sustained.").

Ayala advised Batros that Ayala was planning on moving into the home.  (Batros Dep. 17:3-10.)  Moreover, even taking Ayala's own position at face value, that he told Batros he was going to move in once he had finished renovations, that representation would still be false if Deckert's investigation report is credited. Deckert's investigation report finding that the home had "For Rent" signs and reporting that Mr. Ayala admitted to preparing the home to rent out creates a genuine dispute of material fact regarding whether Plaintiffs intended to use the house as their primary residence.  There is also, at a minimum, a genuine dispute of fact as to detrimental reliance.  Home Site's underwriting guidelines at least raise a dispute about whether it would have issued coverage if it had known that Plaintiffs were not intending to move into the property within 60 days.[7]

Because the facts underlying the equitable fraud defense are in dispute, Plaintiffs are not entitled to summary judgment on that issue.

**B.  Interpretation of policy**

Insurance coverage is a matter of contract law determined by the language of insurance agreements.  Under New Jersey law, the

---

[7]  There is a genuine dispute about whether Plaintiffs planned to move into the property at all, as well as there being a dispute over whether, if they did so intend, it was to be within 60 days.

words in insurance agreements are to be given their ordinary meaning, but any ambiguity is to be construed liberally in the insured's favor.  Longobardi v. Chubb Ins. Co. of New Jersey, 582 A.2d 1257, 1260 (N.J. 1990).[8]

In a March 12, 2007 letter, Home Site denied that the policy covered the fire because Coverage A of the policy only covers "[t]he dwelling on the 'residence premises' shown in the Declarations."  (Pl.'s Ex. J ("Insurance Declarations and Agreement") at 6.)[9]  The dwelling listed in the Declarations is the 112 Wheaton Ave. property.  (Id. at 2.)  The policy further defines "residence premises" as "the one family dwelling, other structures, and grounds . . . where you reside and which is shown as the 'residence premises' in the Declaration."  (Id. at 6.)

Home Site reads the definition of "residence premises" as doing the work their underwriters were supposed to have done, interpreting the phrase to mean the home that the insured is currently occupying nightly or will be within 60 days.  But there

---

[8]  If a policy is "inconsistent with public expectations and commercially accepted standards," then even unambiguous language can be given something other than its ordinary meaning in order to comport with "an insured's 'reasonable expectations.'"  Werner Indus. v. First State Ins. Co., 548 A.2d 188, 191 (1988) (internal quotation and citation omitted).  But there is no argument as to why that exception should apply here.

[9]  As discussed above, Home Site also denied coverage based on the putative material representation made about the occupancy status of the residence, but this argument rests on language contained in its underwriter guidelines, not the policy, and is therefore only an argument about fraud and not coverage.

13

are two independent problems with this reading.  First, each time "residence premises" is defined it is defined as the property which is shown in the Declarations, which in this case is the Wheaton Ave. property.  Home Site reads this as making the definition conditional on the structure meeting both some implicit definition of "reside" and being the one listed on the Declarations.  But an equally plausible reading of "[t]he dwelling on the 'residence premises' shown in the Declarations" is that whatever dwelling is shown in the Declarations is the residence premises.

Second, Home Site puts the full weight of its argument upon the connotation of the phrase "where you reside" even though reside is not defined by the policy, and the context leaves the phrase ambiguous as to whether the term denotes current or immediate occupancy or not.  The language is plausibly being used to denote the structure that the insured will use as a residence during those periods in which the insured is occupying this property.  Coverage A of the policy, in which this phrase appears, provides coverage for only that structure used as a dwelling, as distinct from Coverage B's coverage for other structures.  Indeed, the definition of "insured location" includes both "residence premises" and "The part of other premises, other structures and grounds used by you as a residence."  (Id.)  Since this is a homeowners policy, it

14

principally covers (in Coverage A) the structures used as homes, not the ones used as barns, etc.  This interpretation of the phrase is substantially supported by the fact that the policy excludes loss for "Vandalism or malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.  A dwelling being constructed is not considered vacant."  If the term "reside" meant "currently or imminently sleeping in," then it would be unnecessary to include this exclusion.[10]

It would be odd indeed if Home Site wrote these definitions intending by these terms to exclude from coverage those residences that an owner intends to eventually live in once repairs are conducted.  The policy could easily have excluded premises in which the owner of the premises is not occupying them overnight on a regular basis or set forth a period within which an owner must move into the home, and could have defined the insured property in that way without using the language that equates the property so defined with the one listed in the declarations.  Instead, this policy equates the residence premises with the one listed in the declarations, and then

---

[10]  This exclusion is raised by Home Site's denial letter, which states "the information available to us at this time also confirms that the fire appeared to be intentionally set in the basement."  But there is no evidence that the fire was intentionally set in this record, and therefore no evidence of malicious mischief.  And, in any case, the language excludes dwellings that are unoccupied because they are under construction.

defines residence premises in a way that could include structures designed to be used by the owner as a residence, even if they are not currently occupied by the owner.  See Doto v. Russo, 659 A.2d 1371 (1995) (noting that when the Court is obligated to construe an ambiguous term in an insurance policy, it must consider whether more precise language by the insurer would have resolved the issue).

In short, the Court agrees with Plaintiffs that the policy language does not limit the definition of the covered dwelling to one currently occupied by the owner, even though it would have been quite easy to do so.  Apparently, Home Site instead relied on its agents to only offer insurance to insureds who intended to occupy their homes.

Nevertheless, the Court cannot grant Plaintiffs' summary judgment as to the coverage issue, because, as mentioned above, there is a genuine dispute of fact over whether this structure was ever to be used as a residence for the insured, or was to be used as a rental property.

### C. Rescission, defenses to coverage, and N.J. Admin. Code §11:1-20.2

Plaintiffs raise a New Jersey regulation, N.J. Admin. Code §11:1-20.2(d) and (e), that limits the conditions under which an insurer can cancel a homeowner's policy.  The regulation provides

16

that cancellation is invalid unless notice is given to the insured 30 days prior to the effective date of cancellation, or in the case of cancellation for nonpayment, 10 days prior.  N.J. Admin. Code § 11:1-20.2(d),(e).  As N.J. Admin. Code § 11:1-20.4 makes clear, the regulation also applies to cancellation due to material misrepresentation in the formation of the agreement.

Plaintiffs interpret the regulation to mean that since Home Site failed to properly cancel the Plaintiffs' insurance policy prior to the fire, then coverage was valid regardless of material misrepresentation or nonpayment.  (Pls.' Br. 10.)  Home Site says little about Plaintiffs' interpretation of the regulation, other than to offer the conclusory observation that it is "misplaced," followed by a series of non-sequiturs.

N.J. Admin. Code § 11:1-20.2 was initially promulgated in 1985 on an emergency basis to "curb what the commissioner [of insurance] conceived as abuses by insurance companies, including midterm policy cancellations, blanket nonrenewals, cancellations of entire lines of insurance and midterm premium increases without adequate reasons or notice to the insureds."  Matter of N.J.A.C. 11:1-20, 505 A.2d 177, 186 (N.J. Super. Ct. App. Div. 1986).  None of the cases cited by Plaintiffs apply the regulation to the use of contract defenses regarding past periods of coverage, as distinct from efforts by insurers to cancel prospective coverage, and the Court is aware of no precedent

17

interpreting the regulation as Plaintiffs do.  As is apparent
from the Appellate Division's searching review of the regulation
in Matter of N.J.A.C. 11:1-20, the regulation was not designed to
address insurers denying coverage based on an argument that a
policy was void or that the party seeking coverage had breached
the agreement, but instead designed to prevent the cancellation
of prospective coverage for arbitrary or discriminatory reasons
and to prevent nonrenewal for nonpayment for ongoing coverage
without warning.  Id. at 187-190 (finding, for example, that "the
commissioner saw no justification for the practices adopted by
insurers in terminating coverage prior to the expiration dates of
policies and increasing rates and reducing coverage in
midterm.").  See also Harvester Chemical Corp. v. Aetna Cas. &
Sur. Co., 649 A.2d 1296, 1301 (N.J. Super. Ct. App. Div. 1994)
(explaining that limits on cancellation are about insurance
contracts that gave insurer ability to cancel for unspecified or
inadequate reasons even though the policy was otherwise valid).

To interpret § 11:1-20.2 to forbid equitable fraud or
substantial breach as defenses to coverage unless prospective
notice is given would be to place an enormous burden on insurers
to discover such fraud or breach before a covered event (and,
indeed, would be to foreclose them from not covering such an
incident for many days even after discovery by their diligence).
And if the regulation had such an effect, it would have been

18

recognized in any of the hundreds of homeowner's insurance coverage cases since 1986 in which nonpayment or material misrepresentation are raised as defenses to coverage.

In sum, if Plaintiffs seek to persuade the Court that § 11:1-20.2 has this profound and heretofore undiscovered effect, it will take more than citation to two inapposite cases. If, on the other hand, Plaintiffs are merely arguing that this method of cancellation was ineffective, and that Defendant must instead raise its defenses to the claim in this action, then Plaintiffs are entirely correct.

### D. Nonpayment

Plaintiffs' nonpayment of the insurance premium presents a potential obstacle to their recovery because it would constitute a breach of their own performance obligations. See Frederico, 507 F.3d at 203.

All that is known from the record adduced by the parties is that in March 2009 Home Site wrote to Plaintiffs' then-attorney Thomas Booth indicating that Home Site was amending its answers to interrogatories to include two witnesses who "may be called upon at time of trial to testify as to non-payment of insurance premium for homeowner's insurance" for the home. Neither Home Site nor Plaintiffs assert any facts with regard to the nonpayment, though Plaintiffs do not dispute Home Site's

unsupported assertions.  However, for their motion, Defendant Countrywide did produce a copy of the revised denial letter stating that no payments were ever made.  (Countrywide's Ex. L.)

Under New Jersey law, it is Plaintiffs' burden to show that they performed their own contractual obligations.  Consequently, since they have not adduced evidence that they or their lender paid their insurance premium (and since there would seem to be a dispute over the issue even if they had adduced this evidence), they are not entitled to summary judgment as to this issue.[11]

## V.  COUNTRYWIDE'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs claim Countrywide is liable for failing to forward the insurance payments from the escrow, and for permitting the closing to go forward despite the putatively invalid insurance (or, alternative, for failing to discover the problem when they purchased the loan).  Plaintiffs have conceded that Defendants should be granted summary judgment as to the fraud claims, and the Court agrees that there is good cause for doing so.  Having conceded to summary judgment on their fraud claims, Plaintiffs oppose summary judgment as to four causes of

---

[11]  As the Clerk of Court indicated on November 23, 2010, Home Site, perhaps inadvertantly, sealed two of the depositions attached to their opposition brief in this motion.  If Home Site intentionally sealed the documents, Home Site may submit a motion within fourteen (14) days of this Opinion seeking such sealing pursuant to Local Civil Rule 5.3.  If no motion is received by that date, the Court will unseal the documents.

action: negligence, breach of contract, violation of RESPA, and violation of a state statute, N.J. Stat. Ann. § 17:16F-1.

### A.   Negligence

Plaintiffs' negligence claim is barred by the statute of limitations.  The alleged conduct occurred in late 2006 and the Complaint was not filed until May 29, 2009, exceeding the two-year statute of limitations.  N.J. Stat. Ann. § 2A:14-2. Plaintiffs concede that the claim would be otherwise barred, but contends that the dismissal without prejudice of the state court litigation included an agreement in which Countrywide agreed to waive all statutes of limitation defenses as they related to the Plaintiffs' complaint filed in 2007.  Plaintiffs, however, did not attach this alleged waiver.  Without those documents, the Court has no choice but to grant Countrywide summary judgment based on the statute of limitations.

Even if the Court assumed to be true what Plaintiffs' counsel asserts about waiver, Countrywide correctly contends that the economic loss doctrine forecloses Plaintiffs' negligence claim anyway.  The economic loss doctrine "bars a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property."  Public Service Enter. Group, Inc. v. Philadelphia Electric Co., 722 F. Supp. 184, 193 (D.N.J.

1989).

If Countrywide owed any duty to Plaintiffs to ensure that Plaintiffs secured valid insurance, or to pay the premiums of that insurance, the duty arises from contract.  "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 278 (2002).

Plaintiffs assert (without authority or further argument) that Countrywide "had an independent duty as the servicing agent to advise the Plaintiffs that the contractual requirement to pay the homeowners' insurance did not apply to the Home Site invoice and that no payment would be made for same."  But "generally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." Saltiel, 788 A.2d 268, 276 (quoting W. Page Keeton et al., Prosser & Keeton on the Law of Torts, § 92, at 655 (5th ed. 1984)).  So it is not at all clear how the duty to disclose this information would arise if not by the fact of the contract.

Countrywide will be granted summary judgment as to the negligence claim.[12]

---

[12]  Plaintiffs also allege that Assured acted as the agent of Countrywide and therefore Countrywide is vicariously liable for Assured's negligence.  This claim is also foreclosed for the reasons given above, and because Plaintiffs have not adduced

**B.    Breach of contract**

As stated above, to prove a breach of contract claim a party must show that there is (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. <u>Frederico</u>, 507 F.3d at 203.  For this claim, the contract in question is the mortgage agreement.  Although the pleadings could be read to bring the breach claim based on Countrywide's alleged failure to verify that the insurance was valid, Plaintiffs implicitly limit the claim to the failure of Countrywide to make the insurance payment.[13]  (Pls.' Br. 9-10.) The Mortgage requires the Lender to apply the sums paid by the Borrower into escrow to pay the homeowner's insurance premiums "no later than the time specified under RESPA."  (Countrywide Ex. B ¶ 3.)

Countrywide first argues that the mortgage did not require it to pay past due insurance payments, and that it is not liable for Assured's possible pre-assignment breach of this provision. RESPA requires payment "in a timely manner as such payments become due."  12 U.S.C. 2605(g).  The phrase "in a timely manner," is construed by the Department of Housing in its

---

evidence of an agency relationship.

[13]  In addition to Plaintiffs appearing to concede the other bases for the breach claim, no part of the contract imposes such an obligation.

23

regulations to mean, "on or before the deadline to avoid a penalty."  24 C.F.R. § 3500.17(k)(1).  Marks v. Quicken Loans, Inc., 561 F. Supp. 2d 1259, 1264 (S.D. Ala. 2008) ("[T]he loan servicer need only make such payment in a timely manner, that is, before the insurer-imposed deadline to avoid a penalty.").

Countrywide somewhat implausibly interprets the conjunction of RESPA and the mortgage as imposing a one-time obligation to make the timely payment, without imposing any kind of continuing obligation on the lender or servicer to make a late payment if the timely payment is missed.  But the Court need not resolve this issue of interpretation since, even assuming that interpretation to be correct, Countrywide has not submitted evidence which would indicate that the invoice it received was for a payment that would be "on or before the deadline to avoid a penalty."  24 C.F.R. § 3500.17(k)(1).

It is a separate question whether Countrywide could be held responsible for Assured's breach of the provision if the provision imposed no obligation on Countrywide.[14]  Since it is not clear when, if ever, the Court will have to reach that issue, and since the parties have only discussed the inapposite doctrine of the holder in due course, the Court will reserve judgment on

---

[14]  Plaintiffs' Count XV (improperly labeled Count IV by the Amended Complaint) alleges that "Defendant Countrywide is the assignee of the mortgage note between Defendant Assured Lending and Plaintiffs and, as such, is liable over to Plaintiffs for all breaches of Assured Lending therefrom."  (Compl. ¶ 87.)

that issue.[15]

Countrywide's second argument is that no harm was done by the breach because the insurance was rescinded because of material misrepresentation.  But whether the rescission for material misrepresentation was effective or not is a matter of continuing dispute.  If Countrywide is responsible for creating the only valid basis for rescission, then Countrywide's conduct will have been the proximate cause of the rescission.

Finally, Countrywide contends that Plaintiffs have failed to establish that they performed their own contractual obligations because they failed to obtain valid homeowners' insurance.  But, as with Home Site's other argument, this argument assumes that the insurance was invalid apart from the nonpayment, and that issue is still in dispute.

Summary judgment will therefore be denied as to the breach of contract claim.

---

[15]  The holder in due course doctrine provides that if the holder of a note secured by a mortgage to whom the mortgage is also assigned is a holder in due course, then that entity can enforce the mortgage and note according to its terms without the mortgagor being able to raise personal defenses it may have had against the assignor.  See Carnegie Bank v. Shalleck, 606 A.2d 389 (N.J. Super. Ct. App. Div. 1992).  The doctrine does not speak to circumstances under which an assignee of a mortgage agreement can be held responsible for damages flowing from the assignor's pre-assignment, post-formation breach of the mortgage agreement (or when it is obligated to mitigate those damages, as in the case of making a late payment to preserve insurance coverage).

### C.   RESPA

RESPA provides that "If the terms of any federally related mortgage loan required the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of . . . insurance premiums . . ., the servicer shall make payments from the escrow account for such . . . insurance premiums . . . in a timely manner as such payments become due."  12 U.S.C. 2605(g).  RESPA also provides that "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure," and in the case of individuals shall be liable for "any actual damages to the borrower as a result of the failure."  § 2605(f). Plaintiffs maintain that Countrywide's failure to pay the December 28, 2006 Home Site invoice using the escrow funds violates § 2605(g) and harmed Plaintiffs by providing to Home Site a potentially legitimate basis for denying coverage.

Countrywide admits to not understanding Plaintiffs' RESPA claim, but nevertheless sought summary judgment based on its speculation about what the claim was, instead of resorting to the myriad ways in which the Federal Rules of Civil Procedure provide for clarification or dismissal of a vague claim, the propounding of contention interrogatories being the most useful. Consequently, most of Countrywide's arguments made in its moving brief were irrelevant to the claim as explained by Plaintiffs.

26

Countrywide then attempted to save this error by asserting new arguments in their reply.

The Court will only consider these arguments to the extent that Plaintiffs were given fair notice of them and an opportunity to discuss them in Plaintiffs' opposition brief.  The only arguments made in the moving brief that are applicable to Plaintiffs' actual RESPA claim are those generic arguments applied to all the claims discussed and dismissed above with respect to the contract claim: that Countrywide was only obligated to make future payments, and that there was no harm because Home Site would have denied the insurance claim even if the premium had been paid.  Since, as previously explained, neither of these arguments provides a basis for summary judgment, Countrywide's motion will be denied as to this count.

### D. N.J. Stat. Ann. § 17:16F-18

N.J. Stat. Ann. § 17:16F-18 mirrors RESPA, providing that "Each mortgagee or servicing organization requiring a mortgagor to make payments into an escrow account shall make each disbursement from the escrow account before the amount due becomes delinquent, provided that funds paid into the escrow account by the mortgagor are sufficient for the disbursement."  § 17:16F-18(a).

Defendant's sole argument in its brief supporting the motion

27

is the same argument it makes with respect to the RESPA and breach of contract claim:  that Countrywide was only obligated to make payments for future coverage, not payments that were past due.  For the same reasons the Court rejected this argument above, it will reject it here.

Defendant also contends for the first time in its reply that it could not make the payment because Countrywide was cancelling the policy.[16]  This argument is both procedurally improper and substantively meritless.  It was not raised in the moving brief, and in any case there is no record evidence pointed to in Countrywide's Statement of Material Facts showing that the invoice could not be paid as a consequence of the notice of cancellation.  This aspect of Countrywide's motion will therefore be denied.

### E.  Counterclaim

Countrywide has a state court judgment of December 11, 2007 against Plaintiffs in the amount of $102,244.96.  (Countrywide Ex. I.)  Countrywide brings a counterclaim against Plaintiffs seeking to collect the outstanding portion of that judgment.  Generally, in a suit on a judgment of a court of one of the states, the Constitution's Full Faith and Credit Clause requires

---

[16]  Countrywide seems to have had a bad case of l'esprit d'escalier (spirit of the stairs), the act of thinking of a response when it is too late to deliver it.

the enforcement of the judgment unless it is shown that the judgment was entered without jurisdiction.  U.S. Const. Art. IV § 1; 28 U.S.C. § 1738; see, e.g., Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151 (5th Cir. 1974).

Plaintiffs' sole argument in opposition is to contend that since Countrywide breached the mortgage agreement by failing to pay the insurance premium, they are entitled to a defense of equitable estoppel.  It is not at all clear that equitable estoppel would apply to prevent a judgment as to the outstanding debt obligations, or that Plaintiffs have adduced the requisite evidence for it.  But in any case, this was a defense that needed to be raised before the state court in the foreclosure action. This Court cannot now entertain arguments to invalidate the state court's judgment.  See 28 U.S.C. § 1257 (2006) (allowing appeal from state court decisions to the United States Supreme Court); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483-84 (1983); Gary v. Braddock Cemetery, 517 F.3d 195 (3d Cir. 2008).

Countrywide appearing to have a valid New Jersey judgment in the amount of $102,244.96 less $40,516.94 received from the mortgage insurance carrier and $100 from sale of the home (Countrywide Ex. J & K), this Court will record Countrywide's judgment with respect to their counterclaim in the amount of

29

$61,628.02.

## VI.  BATROS'S MOTION FOR SUMMARY JUDGMENT

To establish negligence, plaintiff must prove (1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately caused by defendant's breach.  Endre v. Arnold, 692 A.2d 97, 100 (N.J. Super. Ct. App. Div. 1997).  Under New Jersey law, an insurance agent has a fiduciary duty to his clients "to exercise good faith and reasonable skill in advising insureds."  Weinisch v. Sawyer, 587 A.2d 615 (1991).  A broker who procures a policy that is void or materially deficient because of his failure to exercise the requisite skill or diligence becomes liable to his principal for any loss.  Aden v. Fortsh, 776 A.2d 792, 801 (N.J. 2001) (internal citations and quotations omitted).  However, under comparative negligence principles,  "if the conduct of the client, rather than that of the professional, was the sole proximate cause of the alleged tort, a jury may conclude that the professional is not liable."  Id. at 799-800.

This claim turns entirely upon what was said by Gustavo Ayala to Batros when they spoke over the phone in October 2006, through an interpreter.  And on this question, there is a genuine dispute of material fact.

Both sides agree that Ayala advised Batros that Ayala was

30

planning on moving into the home.  (Batros Dep. 17:3-10; Gustavo
Ayala Feb. 6, 2007 Dep. 24:9-21.)  But they disagree about
whether Ayala told Batros that he would not be moving in until he
completed renovations.  Botros denies that Ayala said anything
about renovating the house before moving in, but he does not
recall if he asked Ayala specifically about this.  (Batros Dep.
26:6-14.)  Batros advised Mr. Ayala that the Home Site policy
would be an owner-occupied policy, but there is no evidence that
Batros explained to Ayala that this meant he would have to move
in within a specified period.  (Id. at 25:20-24)

Ayala offered contradictory testimony in his two
depositions.  In 2007, he testified that he told Botros that he
was going to move in once he had finished renovations.  (Gustavo
Ayala Feb. 6, 2007 Dep. 24:9-21.)  But in 2005 Ayala had
testified that he did not tell Batros about the construction that
would happen before he moved in.  (Gustavo Ayala Jan. 16, 2005
Dep. 45:24-46:9, 52:1-13.)  However, contradictory deposition
testimony does not cancel itself out.  Instead, it creates an
issue of credibility for the jury to decide.  Unlike a
contradictory affidavit, contradictory deposition testimony must
be resolved by a jury because the doctrine permitting the Court
to ignore a contradictory affidavit rests on the peculiar
characteristics of that document.  See Jiminez v. All American
Rathskeller, Inc., 503 F.3d 247, 253-54 (3d Cir. 2007)

31

(explaining that because a deponent can be cross-examined at a deposition, depositions are more reliable than affidavits).

Finally, Mr. Ayala also signed a document indicating that the home would become his principal residence within 60 days of the sale, and Batros argued that this document supports his position. But there is no testimony that Batros was even aware of this subsequent document, so it is not clear how it could have affected Batros's choice of this insurance policy. At most, it is circumstantial evidence that Gustavo Ayala told Batros that he would be moving into the home within 60 days of the sale, but it does not transform that issue into an undisputed fact.

Because there is a genuine dispute of material fact over whether Batros was informed of Plaintiffs' plans to renovate the property before moving in, summary judgment as to Batros's negligence must be denied. Additionally, because Batros and Prudential's sole argument against vicarious liability is a lack of underlying negligence liability, the motion must also be denied with respect to that issue.


## VII.  CONCLUSION

Many of the key facts in this case are still in dispute. Principally, a fact-finder will have to determine the Ayalas' intentions regarding the property, and what they conveyed to Batros. Consequently, the only issues on which summary judgment

is warranted are the ones conceded by Plaintiffs (the fraud claims), the negligence and vicarious negligence claims against Countrywide, and Countrywide's counterclaim against Plaintiffs based on the state court judgment.

The accompanying Order will be entered.


**June 27, 2011**                           **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             United States District Judge

33